UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HEATHER S.,<br><br>                    Plaintiff,<br><br>      v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | Case No. 3:23-cv-05230-TLF<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff seeks judicial review under 42 U.S.C. § 405(g), of defendant's denial of plaintiff's application for Disability Insurance Benefits (DIB). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 2. Plaintiff challenges the Appeals Council's decision (AR 148-156), as well as the ALJ's decision (AR 118-147) finding that plaintiff was not disabled. Dkt. 4, Complaint; Dkt. 9, Opening Brief of Appellant, at 2.

Plaintiff filed an application for DIB on June 7, 2018. AR 291. She alleged an onset date of November 10, 2015. *Id.* The application was initially denied, and reconsideration was denied. Plaintiff appealed and two hearings were conducted – October 27, 2020, and January 22, 2021. AR 14-86. After the ALJ issued a written decision finding plaintiff was not disabled, AR 118-147, the Appeals Council granted

1  review but only corrected the date range, limiting the review period – from November

2  10, 2015, through December 31, 2020 (the date last insured). AR 148-156.

3      The ALJ found, at step two of the five-part analysis, that plaintiff had the following

4  severe impairments: "major depressive disorder; possible PTSD; possible generalized

5  anxiety disorder; substance abuse disorder (alcohol, amphetamine, cocaine)." AR 124.

6  The ALJ reviewed step three, "[i]ncluding the claimant's substance use" and found the

7  criteria of listing 12.04 had been met. AR 126-130. Then, the ALJ went back to step two

8  and found that "[i]f the claimant stopped the substance use, the remaining limitations

9  would cause more than a minimal impact on the claimant's ability to perform basic work

10  activities; therefore the claimant would still have a severe impairment or combination of

11  impairments." AR 130. The ALJ then for a second time evaluated step three and found

12  that if the claimant stopped the substance use, she would not meet the criteria of any

13  listing. AR 130-132.

14      The ALJ evaluated plaintiff's RFC without considering alcoholism or drug

15  addiction – the ALJ determined that if plaintiff stopped alcohol and drug use, the RFC

16  would be: full range of work at all exertional levels, but she would have nonexertional

17  limitations: "[s]he can understand and remember simple instructions; has sufficient

18  concentration, persistence, and pace to complete simple, repetitive tasks at an

19  acceptable pace; should have only occasional, brief work-related interactions with co-

20  workers, supervisors and the general public; can adapt to normal work changes in a

21  non-demanding work environment (defined as one involving simple, repetitive work at

22  normal but not fast production pace)." AR 132.

23

24

25

1    Given this RFC, the ALJ found at step four that plaintiff could not perform past

2    work as a paralegal. AR 139. The ALJ found at step five, that "[i]f the claimant stopped

3    the substance use, considering the claimant's age, education, work experience, and

4    residual functional capacity, there have been jobs that exist in significant number in the

5    national economy that the claimant can perform," including: laundry laborer, cleaner –

6    industrial, and cleaner II. AR 140. The ALJ determined "substance use disorder is a

7    contributing factor material to the determination of disability because the claimant would

8    not be disabled if [she] stopped the substance use. . .. [T]he claimant has not been

9    disabled . . . at any time from the alleged onset date through the date of this decision."

10    AR 140.

11                                    DISCUSSION

12    Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

13    denial of Social Security benefits if the ALJ's findings are based on legal error or not

14    supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874

15    F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such

16    relevant evidence as a reasonable mind might accept as adequate to support a

17    conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations

18    omitted). The Court must consider the administrative record as a whole. *Garrison v.*

19    *Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the

20    evidence that supports and evidence that does not support the ALJ's conclusion. *Id.*

21    The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did

22    not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope

23    of the Court's review. *Id.*

24

25
                                       3

1    According to 42 U.S.C. § 423(d)(2)(C), "[a]n individual shall not be considered to

2    be disabled for purposes of this subchapter if drug addiction or alcoholism would . . . be

3    a contributing factor material to the Commissioner's determination that the individual is

4    disabled." Under the relevant SSA regulations, the ALJ is required to consider as a "key

5    factor" to the materiality of any drug addiction or alcoholism, "whether an individual would

6    still be disabled if she stopped using alcohol or drugs." *Sousa v. Callahan,* 143 F.3d 1240,

7    1245 (9th Cir. 1998). *See* Social Security Ruling (SSR) 13-2p, 2013 WL 603764 (Feb. 20,

8    2013).

9    The ALJ is required in phase one to conduct the sequential five-step inquiry

10   "without separating out the impact of alcoholism or drug addiction," and then if the plaintiff

11   is found to be disabled, and there is medical evidence of alcoholism or drug addiction, the

12   ALJ is required in phase two to conduct the sequential five-step inquiry for a second time

13   – separating out any impact of the alcoholism or drug addiction and determine whether

14   those conditions are a contributing factor that is material to the determination of disability.

15   *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). The burden of proof is on

16   plaintiff to establish that alcoholism or drug addiction is not material to the disability claim.

17   *Para v. Astrue,* 481 F.3d 746, 7748-749 (9th Cir. 2007). Claimants who are in a situation

18   where 42 U.S.C. § 423(d)(2)(C) applies "must be given an opportunity to present evidence

19   as to whether their disability would have remained if they stopped using drugs and

20   alcohol." *Sousa,* 143 F.3d at 1245.

21   In this case, the ALJ considered the medical record of plaintiff's "substance use"

22   in part three of the five-step evaluation and decided that plaintiff's symptoms and

23   limitations would meet listing 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1, 20

24

25

4

1   C.F.R. § 404.1520(d) and § 404.1525. AR 126-130. Then, the ALJ conducted phase two

2   as required under *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001), and

3   separated out alcohol and substance use as part of the ALJ's evaluation of steps two and

4   three. After finding plaintiff would not meet any listing, the ALJ assessed plaintiff's RFC

5   (AR 132-133), found she could not perform previous employment at step four, and found

6   substance use disorder was a contributing factor material to the determination of disability

7   when finding plaintiff was not disabled at step five. AR 140.

8        Plaintiff presented evidence that during periods of sobriety she was experiencing

9   limitations that met the criteria for disability. Plaintiff asserts, among other issues, that the

10  ALJ erred by rejecting plaintiff's evidence and finding unpersuasive the opinions of Dr.

11  Michael Redmond and Steven Larzerlier, LCSW, and for discounting the opinions of Dr.

12  Linda Miller.

13      **1. Medical evidence.**

14       Under the 2017 regulations, the Commissioner "will not defer or give any specific

15  evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's]

16  medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless

17  explain with specificity how he or she considered the factors of supportability and

18  consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b),

19  416.920c(a)–(b).

20       The Ninth Circuit considered the 2017 regulations in *Woods v. Kijakazi*, 32 F.4th

21  785 (9th Cir. 2022). The Court found that "the requirement that ALJ's provide 'specific

22

23

24

25
                                              5

1 and legitimate reasons'[1] for rejecting a treating or examining doctor's opinion…is

2 incompatible with the revised regulations" because requiring ALJ's to give a "more

3 robust explanation when discrediting evidence from certain sources necessarily favors

4 the evidence from those sources." *Id.* at 792. Under these 2017 regulations,

5    an ALJ cannot reject an examining or treating doctor's opinion as
    unsupported or inconsistent without providing an explanation supported by
6    substantial evidence. The agency must "articulate ... how persuasive" it
    finds "all of the medical opinions" from each doctor or other source, 20
7    C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability
    and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).
8  *Id.*

9    Plaintiff asserts the ALJ improperly discounted the opinions of Mr. Larzerlier and

10 Dr. Redmond (AR 2351-2357, 2427) because the ALJ interpreted Mr. Larzerlier's

11 credentials as being outside the boundaries of the criteria for being an "acceptable

12 medical source." Defendant did not address this in their brief, and defendant concedes

13 that Mr. Larzerlier's opinion, and Dr. Redmond's opinion were supported. Dkt. 12,

14 Defendant's Brief, at 10-12. The parties dispute whether these opinions are consistent

15 with the record.

16    The current regulations, 20 C.F.R. §§ 404.1520c(b), 416.920c(b), require an ALJ

17 to articulate how they consider a medical opinion regardless of whether a given source

18 is considered "acceptable." According to 20 C.F.R. §§ 404.1502(d), 416.902(i), a

19 "medical source" is a person "who is licensed as a healthcare worker by a State and

20 working within the scope of practice permitted under State or Federal law. . .." Under

21

22

23

---

[1] *See Murray v. Heckler,* 722 F.2d 499, 501 (9th Cir. 1983) (describing the standard of "specific and legitimate reasons").

24

25

6

1    "nonmedical source," the regulations include, "[p]ublic and private social welfare agency

2    personnel." 20 C.F.R. §§ 404.1502(e)(3), 416.902(j)(3).

3          In this case, Mr. Larzerlier was a licensed clinical social worker (LCSW).

4    Defendant does not contend Mr. Larzerlier was a nonmedical source. Dkt. 12,

5    Defendant's Brief. Moreover, Mr. Larzerlier's opinions were adopted by Dr. Redmond,

6    so even if the Court were to assume, for purposes of this analysis, that as an LCSW,

7    Mr. Larzerlier was not an acceptable medical source, or was a "nonmedical source," the

8    opinion became Dr. Redmond's opinion on January 6, 2021, and was entered into the

9    Administrative Record as the opinion of a treating physician. AR 2427.

10         The opinions of Mr. Larzerlier (10-8-2020), and Dr. Redmond (adopting Mr.

11   Larzerlier's opinion as accurate and consistent with plaintiff's medical history, symptoms

12   and limitations, on 1-6-2021), state that "It is [their] opinion that in the absence of drug

13   or alcohol use, [plaintiff] remains markedly impaired in her ability to understand,

14   remember, and apply information in a sustained work setting. This is a result of the

15   symptoms from generalized anxiety, posttraumatic stress, and depression. [plaintiff]

16   reports insufficient sleep with daytime grogginess, and racing thoughts. I do not believe

17   that [plaintiff] could adequately remember, apply or understand instructions, even in an

18   unskilled work setting on a consistent basis." AR 2354. Mr. Larzerlier and Dr. Redmond

19   also found plaintiff had marked or serious limitations in the ability to: interact with others

20   in the workplace, ability to concentrate, persist, and work at an acceptable pace on a

21   sustained basis in a work setting, ability to regulate emotions, control behavior, maintain

22   well-being, adapt to changes in work environment, manage psychologically-based

23   symptoms, and that she would lack the ability to stay on task or reliably attend work. AR

24

25
                                            7

1   2355. These limitations, according to Mr. Larzerlier and Dr. Redmond, would cause her

2   to miss at least two days of work per month, and she would be off task at least 20% of

3   the workday beyond regularly expected breaks. AR 2356-2357. They opined that the

4   limitations "have existed since at least November 10, 2015 when [plaintiff] last worked."

5   AR 2356.

6          Regarding the question of materiality of alcoholism or drug addiction, Mr.

7   Larzerlier and Dr. Redmond opined that even without alcohol use, or drug use, plaintiff

8   would have "dual diagnosis" because her medical records dating back to 2015 show the

9   mental health problems preceded, and led to, the alcoholism and drug addiction. AR

10  2355-2356 (*e.g.*, at AR 2355: [P]laintiff] reports a clean and sober date from drugs as of

11  August 16, 2018, following her hospitalization at NARA [Native American Rehabilitation

12  Association]. [P]laintiff] also stopped using alcohol at that time, with one relapse. She

13  has not used alcohol by her own report since October 13, 2019. Even with sobriety,

14  these impairments persist."). They also opined that "Not only do these records show a

15  dual diagnosis but indicates that [plaintiff] struggles more so in her ability to function

16  while sober, which indicates an effort to self-medicate to address her long-standing

17  mental health conditions." AR 2356.

18         The ALJ determined plaintiff's limitations considering the alcoholism or drug

19  addiction met a listing, and this would mean plaintiff was presumptively disabled; the

20  ALJ stated that plaintiff was disabled, but "that a substance use disorder is a

21  contributing factor material to the determination of disability." AR 122. Although a finding

22  of "disabled" does not automatically mean that plaintiff would be entitled to benefits –

23  because the second phase of evaluation under *Bustamante* is necessary – plaintiff is

24

25                                                        8

1   only required to set forth evidence that her substance abuse was not a contributing

2   factor material to her disability after a disability finding is made during the first part of the

3   *Bustamante v. Massanari*, 2-part procedure. *See, Para v. Astrue,* 481 F.3d 746, 748

4   (9th Cir. 2007) (After the ALJ finds, including the alcoholism or drug addiction, that

5   plaintiff is disabled – then, if the evidence concerning plaintiff's abstinence and the

6   effect of such abstinence on plaintiff's persisting disability is inconclusive, the ALJ's

7   decision to deny benefits would be upheld under 42 U.S.C. § 423(d)(2)(C), and

8   *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001)).

9        In this case, the ALJ erred in failing to fully and fairly evaluate the opinion

10   evidence of Mr. Larzerlier and Dr. Redmond, as it pertained to each step of the five-step

11   process when considering the second phase of review required under 42 U.S.C. §

12   423(d)(2)(C), and *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). In the

13   first phase, the ALJ stopped at step three, and found the criteria were met under the

14   listing 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. § 404.1520(d) and

15   § 404.1525. AR 126-130. The ALJ made a finding of disability, AR 122, but did not

16   make any finding regarding the 12-month durational requirement.

17        On the second phase of the evaluation, the ALJ separated out alcohol and

18   substance use as part of the ALJ's evaluation of step two, step three, and plaintiff's RFC

19   (AR 132-133) – then determined substance use disorder was a contributing factor

20   material to the determination of disability when finding plaintiff was not able to perform

21   her past work and was not disabled at step five. AR 140. Under 42 U.S.C. §

22   423(d)(2)(C), and *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001), in the

23   first phase of the evaluation, the ALJ should have evaluated steps four and five without

24

25

1   separating out the alcoholism and drug addiction to determine whether plaintiff was

2   disabled at step five – because even though the ALJ determined the criteria of a listing

3   were met, no discussion of the 12-month duration was forthcoming.

4          In addition, the ALJ's discussion of Dr. Miller's testimony, and rejection of such

5   testimony for purposes of evaluating plaintiff's RFC, was legal error. Dr. Miller testified

6   that, separating out plaintiff's drug and alcohol use, beginning in the fall of 2018 (AR 37,

7   44) when there was sobriety, plaintiff would have been unable to sustain a 40-hour work

8   week because of limitations due to a sleep disorder. AR 46-47. Dr. Miller analyzed

9   plaintiff's medical records going back to 2017. AR 37. The ALJ rejected this opinion and

10  did not include any sleep-impairment-related limitations in the RFC. AR 132,138. The

11  ALJ stated that plaintiff previously worked as a paralegal even when she had sleep

12  problems. AR 138. Yet, plaintiff was fired from that position in November 2015. The

13  ALJ's reasoning about plaintiff's sleep problems affecting her work at her paralegal

14  position is supported by medical records. *See e.g.*, AR 2433 (intake form, dated 11-8-

15  2013, indicating sleep problems, as well as mental health symptoms, and work being

16  affected). But this reasoning does not refute Dr. Miller's findings that between 2018-

17  2020, while sober, plaintiff had sleep disturbances that would cause her to not be able

18  to work full-time. Dr. Miller's opinions are supported by plaintiff's treatment notes, for

19  example, those from 2018 and 2019 concerning her treatment at NARA show that she

20  had persistent sleep disturbances and a myriad of medication side effects. AR 1006-

21  1045 (notes of Dr. Hilde), AR 1053, 1056-1057 (notes of Dr. Vinocur).

22         There is some disagreement about the process for reviewing the drug and

23  alcohol addiction evidence, if the ALJ makes a finding of disability at step three of the

24

25

1  five-step process; as this case illustrates, the plaintiff is required to show substance use

2  disorder was not a contributing factor material to the determination of disability – and it

3  is crucial for the ALJ to conduct a full and fair analysis of the two phases required under

4  *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). *Compare, Benjamin R. v.*

5  *Commissioner,* No. 6:22-cv-00930-HL, 2023 WL 4580980 (D. Or. July 18, 2023) *with*

6  *Stephanie M. v. Saul,* No. 20-cv-01711-MMA-BGS, 2022 WL 1037112 (S.D. Cal. April 6,

7  2022), *report and recommendation adopted sub nom. Stephanie M. v. Kijakazi*, 20-

8  cv-1711-MMA (BGS), 2022 WL 1214708 (S.D. Cal. April 25, 2022).

9      An error that is inconsequential to the non-disability determination is harmless.

10  *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). If the errors

11  of the ALJ result in a residual functional capacity (RFC) that does not include relevant

12  work-related limitations, the RFC is deficient, and the error is not harmless. *Id; see also,*

13  *Carmickle v. Comm'r. Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey*

14  *v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx.

15  715, 718 (9th Cir. 2021) (unpublished).

16      In some situations, an ALJ's legal error in the interpretation of medical evidence

17  may be harmless error. *Para v. Astrue,* 481 F.3d 746, 748 (9th Cir. 2007). But as

18  plaintiff points out, defendant is giving a post hoc rationale – the ALJ did not analyze the

19  evidence in the manner suggested in Defendant's Brief. Dkt. 13, Reply Brief, at 3

20  (referring to Dkt. 12, Defendant's Brief at 10). The Court cannot meaningfully review the

21  decision of the ALJ when the two-phase review required by 42 U.S.C. § 423(d)(2)(C),

22  and *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001) was conducted in a

23  confusing manner, *see, e.g.*, AR 45-48, 53-57, and when it appears that Mr. Larzerlier's

24

25

1  opinion was rejected as being either an unacceptable medical source or a "non-medical

2  source," which was legal error.

3  **2. Remaining issues**

4  The Court has concluded that the ALJ committed harmful error and the medical

5  evidence should be reviewed anew. The determination of a claimant's credibility relies

6  in part on the assessment of the medical evidence. Therefore, the ALJ's evaluation of

7  plaintiff's credibility, and the ALJ's evaluation of lay witness evidence, should be

8  assessed anew following remand of this matter.

9  **3. Remedy**

10  The Ninth Circuit has developed a three-step analysis for determining when to

11  remand for a direct award of benefits. Such remand is generally proper only where

12  "(1) the record has been fully developed and further administrative
proceedings would serve no useful purpose; (2) the ALJ has failed

13  to provide legally sufficient reasons for rejecting evidence, whether
claimant testimony or medical opinion; and (3) if the improperly

14  discredited evidence were credited as true, the ALJ would be
required to find the claimant disabled on remand."

15  *Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th

16  Cir. 2014)).

17  The Ninth Circuit emphasized in *Leon* that even when each element is satisfied,

18  the district court still has discretion to remand for further proceedings or for award of

19  benefits. *Leon*, 80 F.3d at 1045.

20  Based on a review of the record, the Court concludes that the record is not free

21  from important and relevant conflicts, such as conflicts in the medical evidence.

22  Therefore, this matter should be reversed for further administrative proceedings,

23  including a *de novo* hearing, not with a direction to award benefits. *See id.*

24

25

CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings. On remand, the Commissioner is directed to conduct a de novo hearing, allow plaintiff to present additional evidence, consider the medical opinions of Dr. Miller, Mr. Larzerlier and Dr. Redmond, and consider whether on remand a different ALJ should be reviewing this case.

Dated this 24th day of January, 2024.

_Theresa L. Fricke_

Theresa L. Fricke
United States Magistrate Judge